## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

**JERRY HARTFIELD,**
        Petitioner,

**v.**                                                    **Civil Action No. H-07-3676**

**NATHANIEL QUARTERMAN,** Director,
Texas Department of Criminal Justice -
Correctional Institutions Division,
        Respondent.

## PETITIONER'S BRIEF

Petitioner, Jerry Hartfield, submits this brief in response to the brief filed on November 20, 2008, by respondent.

I.    The AEDPA does not apply because Mr. Hartfield has filed a § 2241 pre-conviction habeas corpus petition, not a § 2254 post-conviction petition.

The threshold issue in this case is whether Mr. Hartfield's petition is a "pre-conviction" petition under 28 U.S.C. § 2241 or, instead, a "post-conviction" petition under 28 U.S.C. § 2254.   This issue is important for two reasons: first, it is arguably relevant to venue (an issue discussed below); and, second, whether the petition is pre-conviction or post-conviction in nature determines whether the restrictions of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), including its statute of limitations, apply.   As explained below, Mr. Hartfield's petition is a pre-conviction petition.

The relevant facts are incontrovertible: On September 17, 1980, the Texas

Court of Criminal Appeals reversed the trial court's judgment in its entirety – *i.e.*, a reversal of both Mr. Hartfield's capital murder conviction and his death sentence. See Hartfield v. State, No. 59,343 (Tex. Crim. App. 1980).  Before the court's mandate issued, the State filed a motion for rehearing, which was eventually denied on January 26, 1983, in a written opinion that concluded that the court's reversal of the trial court's judgment was proper.  On February 10, 1983, the State filed a motion to leave to file a second motion for rehearing.  The court's mandate issued on March 4, 1983; it declared that "the judgment be reversed. . . ."  At the same time, in a typed notation on the mandate, the court summarily denied the State's motion for leave to file a second motion for rehearing.

On March 15, 1983 – eleven days after the court's mandate had issued – Governor Mark White issued a proclamation that purported to commute Mr. Hartfield's death sentence to a term of life imprisonment.  That purported commutation was in response to a request from the Wharton County trial judge, the Wharton County District Attorney, and Matagorda County Sheriff[1] that had been submitted on January 31, 1983 (*after* the State's motion for rehearing had been denied).[2]

---

[1] The alleged offense occurred in Matagorda County.  On change of venue, the trial occurred in Wharton County.

[2] Respondent appears to suggest that the Texas Court of Criminal Appeals gave the Governor 15 days after its refusal to allow the State to file a second motion for rehearing to commute Mr. Hartfield's death sentence to a life sentence.  See Respondent Quarterman's

Although respondent is correct that the Wharton County trial court and the Texas Department of Criminal Justice, Institutional Division, have treated the Governor's purported commutation as effectively reforming the original judgment of the trial court to a sentence of life imprisonment, under clearly established Texas law the commutation did not have that legal effect.[3]   Rather, as explained below, the original judgment is null and void and has never been reinstated.  For that reason, Mr.

---

Supplemental Briefing, at 9.  Respondent relies on the language in the court's order denying the first motion for rehearing, in which the court stated that a decision of that court is not final (and the mandate will not issue) until after the expiration of 15 days from "the ruling on the final motion for rehearing."  Hartfield v. State, No. 59,343, Opinion on State's Motion for Rehearing, at 3-4 (Tex. Crim. App.  Jan. 26, 1983); see also id. ("We hold that the 15 day period between the rendition of our decision and the date that the mandate issues is a 'reasonable' time to seek commutation of 'sentence' from the Governor.") (citing former Tex. Crim. App. R. 310). Respondent fails to appreciate that the court here was referring to a 15-day period from the date that the court denied the State's original motion for rehearing – which would have expired on February 10, 1983.  Although the state subsequently *attempted* to file a second motion for rehearing, the Court of Criminal Appeals did not grant the State "leave" to file that motion, which means there was no "ruling" on the second motion – insofar as the court did not permit such a motion to be filed.  (If respondent's position were correct, a party could indefinitely prevent the issuance of the mandate by filing endless successive motions for rehearing.)

[3] The fact that a state actor detains a citizen pursuant to paperwork purporting to be a "judgment" of a state court cannot by itself satisfy the "judgment" requirement of 28 U.S.C. § 2254(a).  The statutory term "judgment," like all terms in statutes that are not specifically defined, must be interpreted based on its "ordinary, contemporary, common meaning."  Williams v. Taylor, 529 U.S. 420, 431 (2000).  The ordinary, contemporary, common meaning of a criminal "judgment" is a formal order by a court adjudicating a defendant guilty and imposing some type of sentence in accordance with the applicable law.  In Mr. Hartfield's case, the only judgment fitting this definition was reversed by the Court of Criminal Appeals and, thus, rendered null and void on March 4, 1983.  The fact that the state trial judge thereafter decided to "reform" the vacated judgment based on the invalid commutation of the Governor – and the further fact that state prison officials accepted that "judgment" as a basis to detain Mr. Hartfield – does not permit this Court to treat the state paperwork as a "judgment" within the meaning of § 2254(a).  Cf. Pollard v. United States, 352 U.S. 354, 360 n.4 (1957) ("In a criminal case final judgment means sentence; and a void order purporting permanently to suspend sentence is neither a final nor a valid judgment.") (citation and internal quotation marks omitted).

Hartfield is not "in custody pursuant to the judgment of a State court" within the meaning of 28 U.S.C. § 2254(a).

When the Court of Criminal Appeals' mandate issued on March 4, 1983, the trial court's judgment no longer had any legal effect. Under Texas law then in effect, the reversal of Mr. Hartfield's death sentence on appeal meant that the status of the case was "as if the jury had been unable to agree on a verdict." Harris v. State, 485 S.W.2d 284, 285 (Tex. Crim. App. 1972).[4] That is, the case returned to its legal status before trial. See id. Although a commutation before the mandate issued would have caused the Court of Criminal Appeals to affirm Mr. Hartfield's conviction and reform the sentence to a term of life imprisonment, see Turner v. State, 485 S.W.2d 282, 284 (Tex. Crim. App. 1972) (on rehearing), that did not occur in Mr. Hartfield's case.

The State's failure to stop the mandate from issuing before a commutation could occur[5] and its failure thereafter to seek to recall the mandate is the reason that Mr. Hartfield is not being held pursuant to a "judgment." The Texas Attorney General knew the consequences of failing to obtain a commutation from the Governor before the mandate issued. See Whan v. State, 485 S.W.2d 275, 281 (Tex. Crim.

---

[4] Under Texas law, the mandate was subject to being withdrawn, but only in the same term as the one in which the mandate issued. See Shaffer v. State, 780 S.W.2d 801, 802 n.* (Tex. Crim. App. 1989). The mandate was never withdrawn in this case after issuing on March 4, 1983.

[5] The State also failed to move to stay issuance of the mandate for 60 days – despite the implicit invitation from the Court of Criminal Appeals to do so. See Hartfield, supra, Opinion on State's Motion for Rehearing, at 4 (citing Tex. Cr. App. R. 311).

App. 1972) (Onion, J., dissenting) (quoting from Texas Attorney General's Opinion, No. M-981, which stated that "the executive power to commute" a death sentence to a life sentence could be exercised while a case is pending on appeal, even after a reversal of judgment but before the mandate issues: "*[U]nless and until the Texas Court [of Criminal Appeals] takes final action on the case*, it is still a conviction subject to the executive power to commute.") (emphasis added).  In Mr. Hartfield's case, because the Texas Court of Criminal Appeals took "final action" by issuing the mandate, the Governor's commutation was invalid under Texas law.

Respondent contends that because the Texas courts denied relief – presumably on the merits – in Mr. Hartfield's state habeas corpus action, that is evidence of a definitive ruling by the highest expositor of state law that there is a valid "judgment" of conviction and sentence in this case.  See Respondent Quarterman's Supplemental Briefing, at 10.  Although the Court of Criminal Appeals denied Mr. Hartfield's *pro se* habeas petition "without written order," that adjudication cannot be deemed a ruling that Mr. Hartfield's judgment is still valid.  The "jurisdictional" issue of whether there was a final judgment bestowing habeas jurisdiction on the Court of Criminal Appeals under Tex. Code Crim. Pro. Art. 37.07 was not raised in the pleadings in state court.  Appellate courts often rule on the merits of legal claims without reaching a threshold jurisdictional issue when the parties have not raised it. See, e.g., Will v. Mich. Dep't of State Police, 491 U.S. 58, 63 n.4 (1989).  Such

adjudications cannot be deemed *sub silentio* rulings concerning jurisdiction. <u>Id.</u>

Therefore, this Court cannot infer that the Texas Court of Criminal's summary denial

of Mr. Hartfield's habeas petition without written opinion constituted a determination

that the trial court's judgment is still valid – particularly in view of the well-

established, published precedent of the Court of Criminal Appeals that would conflict

with such an implied ruling. <u>See, e.g.</u>, <u>Harris</u>, <u>supra</u>.

Finally, respondent's reliance on the 1993 version of Tex. Code Crim. Pro.

44.29 – which permits the Court of Criminal Appeals to reverse a death sentence only

and leave intact a conviction when the only error in the case relates to the sentence

and further allows trial courts to conduct punishment-phase-only retrials in such cases

– is misplaced. That statute, which is retroactive to cases with offenses that occurred

before the statute's enactment, has no relevance to a *final* appeal, like Mr. Hartfield's,

in which the Texas Court of Appeals reversed *both* the conviction and sentence and,

furthermore, in which the mandate has issued. In particular, nothing in the 1993

version of the statute permits a state trial court to ignore a pre-1993 mandate of the

Texas of Criminal Appeals in a case in which the appellate court reversed both the

sentence and conviction.

Respondent's citation to <u>Vanderbilt v. State</u>, 973 S.W.2d 460 (Tex. App. –

Beaumont 1998), for the position that "it does matter whether the [Texas Court of

Criminal Appeals'] mandate of reversal issued before or after" the 1993 amendment

occurred is incorrect.  The state appeals court in <u>Vanderbilt</u> did no so hold.  Rather, it held that, where the mandate of the U.S. Court of Appeals for the Fifth Circuit[6] had issued before the effective date of the 1993 statute, the state trial court was required to conduct only a punishment hearing pursuant to the retroactive statute.  <u>Id.</u> at 466. Critically, however, the Fifth Circuit's order did not affect the inmate's conviction and, instead, only vacated his death sentence.  <u>Vanderbilt</u>, 994 F.2d at 200 ("We AFFIRM the district court's grant of the writ insofar as it vacates Vanderbilt's death sentence . . . .").[7]  Prior to the enactment of the 1993 statute, a Texas trial court in a capital case in which a federal habeas court vacated only the death sentence would have been required to hold an entirely new trial and not simply a new capital sentencing hearing.  <u>See, e.g.</u>, <u>Knox v. State</u>, 934 S.W.2d 678, 680 & n.4 (Tex. Crim. App. 1996).  <u>Vanderbilt</u> simply recognized that the 1993 amendment to Art. 44.29 now permits a state trial court, in such circumstances, to conduct a new capital sentencing hearing only – as opposed to an entirely new trial.  The Texas Court of Appeals' decision in <u>Vanderbilt</u> does not hold that the 1993 version of Art. 44.29 permits state trial courts to ignore a pre-1993 appellate mandate that reversed *both* a defendant's capital murder conviction and his death sentence.

---

[6] <u>Vanderbilt v. Collins</u>, 994 F.2d 189, 200 (5th Cir. 1993) (granting federal habeas corpus relief based on a constitutional error that affected only the inmate's death sentence and not his capital murder conviction).

[7] The Fifth Circuit, a federal court conducting habeas corpus review, obviously was not bound by the former Art. 44.29, a state statute.

For the foregoing reasons, Mr. Hartfield is not being held in state custody pursuant to a "judgment" within the meaning of § 2254(a).  Therefore, because this is a § 2241 pre-conviction habeas corpus action rather than a § 2254 post-conviction action, the AEDPA, including its statute of limitations, does not apply.  See Hoyle v. Ada County, 501 F.3d 1053, 1058-59 (9th Cir. 2007); Walck v. Edmondson, 472 F.3d 1227, 1235 (10th Cir. 2007).[8]


II.     Venue is proper in the Southern District of Texas because the warden of the
        Michael Unit is functionally an agent of Wharton County officials.[9]

Assuming that this Court agrees with Mr. Hartfield that his pending habeas corpus petition is a pre-conviction petition filed under § 2241, the question of whether venue is proper in the Southern District of Texas arises.  Although ordinarily

---

[8] Respondent's invocation of the equitable defense of laches is untenable.  The defense of laches in not available in a federal habeas corpus case (other than the time limits imposed by the AEDPA, which does not apply in the instant case).  See Day v. McDonough, 547 U.S. 198, 214-15 (2006) (Scalia, J., joined by Thomas & Breyer, JJ., dissenting) (citing cases; addressing a point not addressed by the majority).  Laches would be particularly inappropriate – not to mention ironic – in a § 2241 pre-conviction habeas corpus case, like this one, in which the petitioner complains that his right to a speedy trial has been violated *by the State's delay*.  Even under the laches doctrine that formerly existed in § 2254 cases (before the enactment of the AEPDA), a respondent could only complain about a petitioner's delays that prejudiced the respondent's ability to respond to the habeas corpus petition – not prejudice that would result if a retrial were ordered.  See Gratzer v. Mahoney, 397 F.3d 686, 690 (9th Cir. 2005).  Respondent appears to complain only about the latter type of prejudice.

[9] Although respondent refers to the issue as one of "jurisdiction," it is more properly described as one of "venue" or, at most, "personal jurisdiction."  Padilla v. Rumsfeld, 542 U.S. 426, 451(2004) (Kennedy, J., concurring, joined by O'Connor, J.); see also id. at 463 n.6 (Stevens, J., dissenting, joined by Souter, Ginsburg & Breyer, JJ.) ("Although the Court makes no reference to venue principles, it is clear that those principles, not rigid jurisdictional rules, govern the forum determination.").

venue in a § 2241 case is in the federal district in which the petitioner is being detained – in this case, the Eastern District of Texas – the Supreme Court has recognized that venue also may be proper in the district in which a federal court has jurisdiction over the ultimate "custodian," even if another custodian (who serves as an "agent" of the ultimate custodian) has immediate control over the prisoner.  Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 495-96 (1973).   Although the warden of the Michael Unit is Mr. Hartfield's immediate custodian, his ultimate custodians are the trial judge in Wharton County, the District Attorney in Wharton County, and the sheriff of Matagorda County.[10]

Mr. Hartfield recognizes the Supreme Court's decision in Rumsfeld v. Padilla, 542 U.S. 426 (2004), in which a 5-4 majority of the Supreme Court held that Braden is limited to "future confinement" situations (i.e., where a prisoner is currently in one jurisdiction but has a detainer from another jurisdiction and wishes to file a speedy trial claim related to the prosecution in the latter jurisdiction).  Id. at 444.  Thus, under the "general rule," id. at 443, "for core habeas petitions challenging present physical confinement, jurisdiction lies only in one district: the district of confinement."  Id.

Padilla does not require this Court to transfer venue to the federal district court in the Eastern District of Texas.  This is because Mr. Hartfield petition is not a "core

---

[10] With leave of the Court, Mr. Hartfield will amend his petition to include the Wharton County and Matagorda County officials as respondents.

habeas petition challenging physical confinement."  Rather, while *in part* Mr. Hartfield (like the petitioner in <u>Padilla</u>) complains about being illegally incarcerated, he also complains that his right to a speedy trial is being violated each day that passes.  The latter complaint, of course, directly and specifically implicates Wharton and Matagorda County officials, over which this Court unquestionably has jurisdiction.  Therefore, Mr. Hartfield's case is more like <u>Braden</u> than <u>Padilla</u> in that important respect and, thus, this Court has jurisdiction under § 2241.

Indeed, in any pre-conviction § 2241 case in which the petitioner alleges that his right to a speedy trial is being violated – and requests, as petitioner does, a speedy trial as a remedy – a federal court necessarily possesses jurisdiction over the custodians in the district of prosecution.   To construe § 2241 otherwise would have the effect of depriving the district court in the jurisdiction of confinement (in this case, the Eastern District of Texas) personal jurisdiction over the state officials in the district of prosecution (in this case, the Southern District of Texas).   That would, of course, deprive the habeas petitioner of a remedy.  If a federal court in the Eastern District were to have jurisdiction only over Mr. Hartfield's "immediate custodian" in the Eastern District, then that court would lack the ability to order a speedy trial in Wharton County, which is in the Southern District of Texas.   Because the Court in <u>Padilla</u> did not address this precise issue, its holding about the "general rule" – limiting venue to "immediate custodian" situations – does not prevent this Court from

holding that venue is proper in the Southern District of Texas under the highly unusual circumstances of Mr. Hartfield's case.  See Padilla, 542 U.S. at 453 (Kennedy, J., concurring, joined by O'Connor) ("Here . . . there is no need to consider some further exception to protect the integrity of the writ or the rights of the person detained.").[11]

For all these reasons, this Court possesses jurisdiction over this case.


III.   Respondent has waived any claim of non-exhaustion.

After initially explicitly stating that Mr. Hartfield had exhausted his state remedies with respect to the speedy trial claim, see Respondent's Motion for Summary Judgment with Brief in Support, at 10 ("The Director believes Hartfield exhausted his state court remedies only to the extent that he raises a speedy trial/due process claim, as he presented such claim to the Court of Criminal Appeals in his first state habeas application."), respondent now contends that Mr. Hartfield "did not properly exhaust this claim in a pretrial motion to the trial court, but in postconviction proceedings." Respondent Quarterman's Supplemental Briefing, at 21.  Respondent has waived the non-exhaustion defense by initially conceding that proper exhaustion had occurred.  See Saldona v. Roach, 363 F.3d 545, 554 (5th Cir. 2004) (citing McGee v. Estelle, 722 F.2d 1206, 1212 (5th Cir. 1984)).

---

[11] Justices Kennedy and O'Connor were part of the 5-4 majority in Padilla.

Assuming *arguendo* that respondent has not waived the non-exhaustion defense, this Court should reject its invocation and address the merits of Mr. Hartfield's speedy trial claim.  First, Mr. Hartfield properly exhausted the speedy trial claim by filing a petition for a writ of mandamus in 2006 requesting the Texas Court of Criminal Appeals to order a prompt retrial (which was denied in a summary order). Anthony v. Texas, 2008 WL 938582, at *2 (S.D. Tex. Apr. 4, 2008) (Atlas, J.) ("The proper procedure for seeking pre-trial relief on speedy trial grounds is to file a petition for writ of mandamus with the Texas Court of Criminal Appeals.") (citing, *inter alia*, Chapman v. Evans, 744 S.W.2d 133, 138 (Tex. Crim. App. 1988)).

Finally, even if this Court were to conclude that a pretrial motion to dismiss the indictment is the proper procedure for exhausting a speedy trial claim in Texas criminal cases, such a procedure would be futile in this case.  See Morris v. Dretke, 413 F.3d 484, 491-92 (5th Cir. 2005) (futility is an exception to the exhaustion doctrine).  As respondent has explained in his brief, the state trial court clearly (and erroneously) believes that Mr.  Hartfield is in custody pursuant to a final judgment of conviction and sentence.  That court will not address the merits of a pretrial motion to dismiss the indictment on speedy trial grounds.

IV.   <u>The appropriate remedy is to unconditionally grant the writ of habeas corpus and order state officials to release Mr. Hartfield from its custody; alternatively, a conditional writ should issue that requires the state trial court to try Mr. Hartfield in a speedy manner or release him.</u>

As explained below, because there are "special circumstances" in this case, this Court has authority to grant habeas corpus relief by unconditionally ordering the State to release Mr. Hartfield from custody because his constitutional right to a speedy trial has been violated.  Alternatively, assuming *arguendo* that such special circumstances do not exist, this Court still possesses authority to conditionally grant the writ of habeas corpus and order the State to retry petitioner within a reasonable amount of time or, if that cannot be accomplished, release him.

A.   <u>Because of the extraordinary circumstances in this case, Mr. Hartfield is entitled to be released from state custody because of the speedy trial violation in his case.</u>

In <u>Braden</u>, <u>supra</u>, the Supreme Court held that ordinarily a federal court in a pre-conviction habeas corpus case should not order the State to release the petitioner based on undue delay in bringing him to trial.  <u>Braden</u>, 410 U.S. at 493.  The Court held, however, that such unconditional habeas corpus relief may be appropriate if "special circumstances" exist.  <u>Id.</u> at 490; <u>see also</u> <u>Dickerson v. State of Louisiana</u>, 816 F.2d 220, 226-27 (5th Cir. 1987).

Such special circumstances are present in Mr. Hartfield's case.  As a pretrial detainee under Texas law since March 4, 1983, he has been incarcerated in Texas prison under the legal fiction that he is serving a life sentence pursuant to a judgment.

Two years ago, he asked the Texas Court of Criminal Appeals to issue a writ of mandamus and order a trial to occur.  His request was ignored without written order. See In Re Hartfield, No. WR-66,609-02 (Tex. Crim. App. Jan. 31, 2007).  As things currently stand, he will remain indefinitely behind bars serving a fictional "life sentence" unless the federal courts intervene.

Under Barker v. Wingo, 407 U.S. 514, 515 (1972), Mr. Hartfield's right to a speedy trial has been violated.[12]  Barker requires a court to balance four factors in deciding whether to grant habeas corpus relief: (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted his speedy trial rights; and (4) any resulting prejudice to the defendant. Barker, 407 U.S. at 530.

Clearly the length of the delay, over a quarter of a century to date, is extraordinary – indeed, surely unprecedented in the annals of American law for a defendant who was not a fugitive during the period of delay.  Cf. Doggett v. United States, 505 U.S. 647, 652 (1992) (8-½ year delay deemed "extraordinary").   The reason for the delay has been the State's gross negligence based on its failure to follow well-established Texas law – both decisions of the Court of Criminal Appeals and a Texas Attorney General Opinion.  It was not Mr. Hartfield's burden to demand a speedy trial.  "The primary burden is on the prosecution and the courts to insure that

---

[12] Because the AEDPA does not apply, this Court owes no deference to the Texas Court of Criminal Appeals' summary denial of Mr. Hartfield's state habeas corpus petition, which also raised a speedy trial claim.

defendants are speedily brought to trial."  <u>Branscum v. State</u>, 750 S.W.2d 892, 895 (Tex. App.-Amarillo 1988).  "Negligence . . . must militate against the State."  <u>Id.</u> Although Mr. Hartfield did not object until 2006,[13] his objection fell on deaf ears. Finally, he has been prejudiced by the delay.  After a quarter century's delay, this Court should presume prejudice.  <u>Cf.</u> <u>Doggett</u>, 505 U.S. at 657 ("And such is the nature of prejudice presumed that the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows.  Thus, our toleration of such negligence varies inversely with its protractedness.").

In applying the <u>Barker</u> factors to the facts of Mr. Hartfield's case, this Court should exclude all consideration of Exhibit F attached to respondent's brief.  Mr. Hartfield moves this Court strike that exhibit as inadmissible.  That exhibit is an affidavit from Mr. Hartfield's former attorney, Robert Scardino, who represented him at the trial and on direct appeal of his capital murder case in state court.  It was produced by counsel for respondent earlier this year.  That affidavit contains allegations that violate the attorney-client privilege by disclosing supposed confidential conversations between Mr. Hartfield and his former client.[14]  The

---

[13] Mr. Hartfield is illiterate.  Until undersigned counsel was appointed in 2000, Mr. Hartfield has been entirely dependent on "writ writers" to file his *pro se* pleadings.

[14] Although such affidavits by former defense attorneys are routinely filed in habeas corpus cases in which claims of ineffective assistance of counsel have been raised, there has been no ineffectiveness claim made by Mr. Hartfield.  A defendant waives the attorney-client privilege by making a claim of ineffective assistance.  <u>See, e.g.</u>, <u>Tasby v. United States</u>, 504 F.3d 332, 336 (8th Cir. 1974).  That clearly has not occurred in this case.  Mr. Hartfield has never waived the

affidavit is a blatant ethical violation.  See, e.g., State Bar of Texas Committee on Professional Ethics, Opinion No. 378 (1974) (concluding that a client's former attorney would violate the attorney-client privilege by disclosing privileged information concerning former client requested by SEC); State Bar of Texas Committee on Professional Ethics, Opinion No. 384 (1975) (concluding that a client's former attorney concerning former client would violate the attorney-client privilege by disclosing privileged information requested by IRS) .

B.      Alternatively, at the very least Mr. Hartfield is entitled to a speedy trial.

At the very least, this Court should grant the writ of habeas corpus conditioned on Wharton County and/or Matagorda officials bringing Mr. Hartfield's case to trial within a reasonable time (not to exceed 60 days) or permanently release him from custody.  See Atkins v. Michigan, 644 F.2d 543, 547-48 (6th Cir. 1981) (granting such federal habeas relief after finding a speedy trial violation).



privilege.

Respectfully submitted,

MARJORIE A. MEYERS
Federal Public Defender
Southern District of Texas

/s/ Brent E. Newton
BRENT E. NEWTON
Assistant Federal Public Defender
Southern District of Texas No. 16759
Texas State Bar No. 00788115
Attorney for Petitioner
440 Louisiana, Suite 310
Houston, TX 77002-1634
    Telephone:  713.718.4600
    Fax: 713.718.4610

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served on Assistant Texas Attorney

General Marta McLaughlin via email and ECF on November 26, 2008.

/s/ Brent E. Newton
BRENT E. NEWTON