UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JERRY HARTFIELD,                          §
          *Petitioner*,                   §
                                          §
v.                                        §        CIVIL ACTION H-07-3676
                                          §
NATHANIEL QUARTERMAN,                     §
    DIRECTOR OF THE TEXAS DEPARTMENT      §
    OF CRIMINAL JUSTICE - CORRECTIONAL    §
    INSTITUTIONS DIVISION,                §
          *Respondent*.                   §

## MEMORANDUM AND RECOMMENDATION

In 1980, the Texas Court of Criminal Appeals reversed petitioner Jerry Hartfield's capital murder conviction and remanded his case for a new trial. *See Hartfield v. State*, 645 S.W.2d 436, 441 (Tex. Crim. App. 1980). No new trial was ever conducted, yet Hartfield has remained in state confinement for nearly three decades, serving what the State contends is a commuted life sentence. His habeas petition, asserting speedy trial and due process violations, is now before the court on respondent Nathaniel Quarterman's motion for summary judgment, which urges dismissal based on the Antiterrorism and Effective Death Penalty Act's (AEDPA's) one-year statute of limitations. (Dkt. 15).

The court recommends that the State's motion be denied. Hartfield's petition is a *pre*conviction habeas petition under 28 U.S.C. § 2241 and therefore not governed by AEDPA or its time limits. In light of the jurisdiction/venue

requirements for § 2241 petitions, his case should be transferred to the Eastern District of Texas, where Hartfield is now in custody.

### Background

In 1977, a Texas state jury convicted petitioner Jerry Hartfield of the capital murder of Eunice Lowe.  After a brief punishment phase, the jury assessed Hartfield's punishment at death and the trial court sentenced him accordingly.

Hartfield appealed his conviction to the Texas Court of Criminal Appeals. On September 17, 1980, that court unanimously reversed Hartfield's conviction due to *Witherspoon* error.  *See Hartfield*, 645 S.W.2d at 441.  *Witherspoon* error, named for the Supreme Court's decision in *Witherspoon v. Illinois*, 391 U.S. 510 (1968), occurs when a potential juror in a capital case is struck for cause because of generalized reservations about the death penalty, even though the potential juror remains open to the possibility of voting for death in the defendant's particular case.  *See Adams v. Texas*, 448 U.S. 38, 43-45 (1980) (extending *Witherspoon*'s holding to the punishment phase of a capital case).  Because *Witherspoon* error affects only the sentence of death and not the determination of guilt, reversal due to *Witherspoon* error requires only a new punishment phase.  *See Witherspoon*, 391 U.S. at 522 n.21; *Adams*, 448 U.S. at 51.  But under Texas law at the time, the Court of Criminal Appeals was bound to reverse Hartfield's conviction and remand the case for an entire new trial.  *See Hartfield*, 645 S.W.2d

2

at 441 (citing *Evans v. State*, 614 S.W.2d 414 (Tex. Crim. App. 1980)); *see also Ocker v. State,* 477 S.W.2d 288, 291 (Tex. Crim. App. 1972) (noting that courts could not remand for a new assessment of punishment in cases "where the original punishment was set by the jury").

Thereafter, the State moved for leave to file a motion for rehearing.[1]  It argued that the court should reform Hartfield's sentence to life imprisonment rather than remand for a new trial or, alternatively, give the State a reasonable period of time to seek a commutation of Hartfield's sentence from the governor. The court granted leave on November 26, 1980.[2]

Twenty-six months later, on January 26, 1983, the court denied rehearing in a written opinion.  *See Hartfield*, 645 S.W.2d at 441-42.  Given Texas law and the court's prior holdings, the court "reluctantly" denied the State's request to reform Hartfield's sentence to life in prison.  *Id.* at 442.  As for the State's request for more time to seek a commutation, the court quoted Texas Court of Criminal Appeals Rule 310 to the effect that its decision would not become final for fifteen days and declared that period a reasonable time for the State to seek commutation from the governor.  The court also suggested that the State could seek a stay of the

---

[1] Appx. A.  For ease of reference, the court has appended important state records to this opinion.

[2] Appx. B.

3

mandate for up to sixty days if it needed more time, citing Texas Court of Criminal

Appeals Rule 311.

The State then moved for leave to file a second motion for rehearing.[3]  On

March 4, 1983, the Court of Criminal Appeals denied that motion and issued its

mandate to the trial court in the following words:

> [I]t is ordered, adjudged and decreed by the Court that the judgment
> be reversed and the cause remanded for further proceedings in
> accordance with the opinion of this Court and that this decision be
> certified below for observance.[4]

The court's mandate was never recalled, its decision never overturned, the

conviction never reinstated; yet Hartfield never received the "entirely new trial"

ordered by the court.  *Hartfield*, 645 S.W.2d at 442.

Instead, on March 15, 1983—eleven days after the court's mandate

issued—Governor Mark White issued a proclamation, at the State's request,

purporting to commute Hartfield's death sentence to life imprisonment.[5] Hartfield

has remained in state custody ever since, and is currently being held at the Texas

Department of Criminal Justice's Michael Unit in Anderson County, within the

Eastern District of Texas.

---

[3] Appx. C.

[4] Appx. D.

[5] Appx. E.

4

In 2007, the Court of Criminal Appeals summarily rejected, in rapid succession, Hartfield's first application for a writ of habeas corpus, his application for leave to file a mandamus petition, and his second application for a writ of habeas corpus.[6]

Hartfield filed this federal habeas application, pro se, on October 22, 2007. The court subsequently appointed the Federal Public Defender's Office to represent him. (Dkt. 17.)  On October 16, 2008, the court directed the parties to submit supplemental briefs on the question of whether Hartfield is in custody "pursuant to the judgment of a State court" as that phrase is used in 28 U.S.C. § 2254.  Both sides having submitted their briefs, the court now addresses that critical issue.

## Analysis

By its own terms, AEDPA's one-year statute of limitations applies only to a particular subset of habeas petitions—those filed on behalf of persons "in custody pursuant to the judgment of a State court." See 28 U.S.C. §§ 2244(d)(1), 2254(a) (2006).  In order to invoke the limitations defense, then, the State must satisfy this threshold condition.

If Hartfield is in custody pursuant to the judgment of a state court, then

---

[6] See Appxs. F (first habeas application, denied without written order January 31, 2007), G (mandamus application, denied without written order January 31, 2007), H (subsequent habeas application, dismissed May 30, 2007).

AEDPA's statute of limitations prevents the court from granting his habeas petition absent equitable tolling. *See* 28 U.S.C. § 2244(d)(1).  Moreover, even if equitable tolling allows the court to hear the petition, it would have to apply AEDPA's stringent standards of review.  *See* 28 U.S.C. § 2254(d)(1).

By contrast, if Hartfield is not in custody pursuant to the judgment of a state court, then AEDPA does not apply and his habeas petition should be construed as one made under the traditional habeas statute, 28 U.S.C. § 2241.[7]  Unlike habeas petitions governed by AEDPA, habeas petitions under § 2241 have no statute of limitations and are reviewed de novo by federal courts.  *See Day v. McDonough*, 547 U.S. 198, 202 n.1 (2006) ("Until AEDPA took effect in 1996, no statute of limitations applied to habeas petitions."); 2 RANDY HERTZ & JAMES S. LIEBMAN, FEDERAL HABEAS CORPUS PRACTICE AND PROCEDURE § 32.1, 1564 (5th ed. 2005) ("Until Congress' enactment of [AEDPA], it was blackletter law that federal habeas corpus courts were required to resolve all of the petitioner's legal claims *de novo* in the strictest sense of that term.").

---

[7]  *See* 28 U.S.C. § 2241(c)(3) (allowing a court to grant a writ of habeas corpus for any prisoner "in custody in violation of the Constitution"); *White v. Lambert*, 370 F.3d 1002, 1008 (9th Cir. 2004) ("[W]hen the petitioner meets the threshold requirement of being in custody pursuant to a state court judgment, § 2254 is properly seen as a limitation on the general grant of habeas authority in § 2241.  The general grant of habeas authority under § 2241, however, remains available for state prisoners who are not in custody pursuant to a state court judgment."); *Medberry v. Crosby*, 351 F.3d 1049, 1062 (11th Cir. 2003) (same); *James v. Walsh*, 308 F.3d 162, 166 (2d Cir. 2002) (same).

This threshold determination of whether Hartfield's petition is one under § 2254 or § 2241 also has jurisdiction and venue consequences.  Unlike § 2254 postconviction habeas petitions, which can be filed either in the federal district where the petitioner was convicted and sentenced or the federal district where the petitioner is in custody, § 2241 preconviction habeas petitions can be filed only in the federal district where the petitioner is in custody.  *Compare Rumsfeld v. Padilla*, 542 U.S. 426, 442-43 (2004) (§ 2241 petitions) *with Wadsworth v. Johnson*, 235 F.3d 959, 961 (5th Cir. 2000) (§ 2254 petitions).  Thus, if Hartfield's petition is governed by § 2241, the proper forum would be the Eastern District of Texas, where he is now being held, rather than the Southern District of Texas, where he was convicted and sentenced.[8]

## 1.      Is Hartfield in Custody Pursuant to the Judgment of a State Court?

Hartfield's position is as straightforward and subtle as a freight train: (1) the Court of Criminal Appeals's mandate, which reversed and remanded his case for a new trial, nullified the trial court's judgment and returned the case to its pretrial status and (2) he has not been convicted or sentenced by any state court in the meantime.  These propositions are incontrovertible as a matter of fact and law.  *See*

---

[8] Though Hartfield argues that his petition is governed by § 2241, he nevertheless objects to the transfer of his case to the Eastern District for reasons that the court explores in part two of this opinion.

*Ex parte Nickerson*, 893 S.W.2d 546, 548 (Tex. Crim. App. 1995) (holding that "no conviction remains when the judgment has been reversed and remanded for a new trial" and that "the sentence is no longer in effect . . . because it no longer exists."); *see also* Tex. R. App. P. 21.9 ("Granting a new trial restores the case to its position before the former trial").  Therefore, Hartfield concludes that his lengthy detention is not "pursuant to the judgment of a State court" within the meaning of AEDPA.

The State attempts to derail this conclusion by pointing to subsequent actions by various state authorities.  As the court demonstrates below, none of these actions can reasonably be construed as a state court "judgment."

A.      **The Governor's Proclamation**

Article IV, § 11 of the Texas Constitution confers upon the Governor the power to grant commutations of punishment in criminal cases, but only "after conviction."[9]  A commutation is an executive act that reduces a sentence already imposed, substituting lesser for greater punishment.  *See, e.g.*, *Hagelberger v. United States,* 445 F.2d 279, 280 (5th Cir. 1971); *Whan v. State,* 485 S.W.2d 275, 279 (Tex. Crim. App. 1972) (Onion, J., dissenting).

Eleven days after the Court of Criminal Appeals reversed Hartfield's

---

[9] "In all criminal cases, except treason and impeachment, the Governor shall have the power, after conviction, on the written signed recommendation and advice of the Board of Pardons and Paroles, or a majority thereof, to grant reprieves and commutations of punishment and pardons . . . ."

conviction and issued its mandate, the governor signed Proclamation No. 83-04805, which states the following:

> TO ALL TO WHOM THESE PRESENTS SHALL COME:
> WHEREAS, JERRY HARTFIELD, EXECUTION NO. 571, was convicted of the Crime of Murder, a Capital Felony, Cause No. 7794, on June 30, 1977 in the 23rd Judicial District Court of Wharton County, Texas and punishment was set as Death, and
> WHEREAS, the District Judge of the 130th Judicial District Court, Wharton County, Texas and the Sheriff of Matagorda County, Texas have recommended commutation from Death to Life Imprisonment in the Texas Department of Corrections, and
> WHEREAS, the Board of Pardons and Paroles of Texas subsequently recommended the Commutation of Sentence from Death to Life Imprisonment in the Texas Department of Corrections.
> NOW, THEREFORE, I, MARK WHITE, Governor of the State of Texas, by virtue of authority vested in me under the Constitution and laws of this State, and acting upon and because of the recommendation of the Board of Pardons and Paroles dated March 14, 1983, do hereby grant unto the said JERRY HARTFIELD THE COMMUTATION OF SENTENCE FROM DEATH TO LIFE IMPRISONMENT IN THE TEXAS DEPARTMENT OF CORRECTIONS,
> and I hereby direct that a copy of this proclamation be filed in the office of the Secretary of State.[10]

Significantly, though the proclamation recites Hartfield's 1977 conviction and death sentence in the district court, it does not refer at all to the final judgment of the Court of Criminal Appeals reversing that conviction and sentence only a few days earlier.  For all that appears in this proclamation (or, for that matter, anywhere else in the record) Governor White was not aware that there was

---

[10] Appx E.

no longer any death sentence to commute.

The legal effect of a final judgment on appeal reversing a conviction is the same "as if the jury had been unable to agree on a verdict." *Harris v. State,* 485 S.W. 2d 284, 285 (Tex.Crim.App. 1972); *see also Ex parte Nickerson,* 893 S.W.2d 546, 548 (Tex. Crim. App. 1995) ("Because no conviction remains when the judgment has been reversed and remanded for a new trial, the sentence is no longer in effect; it has ceased to operate because it no longer exists.").  The State does not directly challenge this proposition, but argues that a valid commutation of sentence cures *Witherspoon* error detected on appeal, citing *Turner v. State,* 485 S.W.2d 282 (Tex. Crim. App. 1972).  This is true, but begs the question presented here: can the governor validly commute a sentence for a conviction that no longer exists?

The Texas Constitution, by expressly granting the power of commutation only "after conviction," answers this question with an unambiguous "no."  Nor have any Texas courts held to the contrary.  In *Turner v. State,* the commutation occurred while the case was still pending in the Court of Criminal Appeals on remand from the United States Supreme Court, which had found *Witherspoon* error.  On rehearing, the Court of Criminal Appeals expressly recognized the governor's commutation and affirmed the judgment of conviction.  485 S.W.2d at 284.  In other words, at the time of Turner's commutation, there was no final

judgment by the Court of Criminal Appeals reversing his conviction, so Turner still had a sentence that could be commuted.  *See also Whan,* 485 S.W.2d at 280 (Onion, J., dissenting) ("If this court has reversed a conviction and issued its mandate, it would not appear that the Governor, prior to a new trial, could grant a pardon or commute the punishment previously assessed."); Texas Attorney General Opinion No. —981 at 3 (1971) ("Even though the United States Supreme Court may reverse a judgment insofar as the death penalty and remand the case back to the Texas Courts for further proceedings in conformity with its judgment, *unless and until the Texas Court takes final action on the case, it is still a conviction subject to the executive power to commute.*") (emphasis added). Consistent with these authorities, the court must conclude that the purported executive commutation of Hartfield's death sentence was a nullity because that sentence had already been erased by the mandate of the Court of Criminal Appeals.

In an attempt to escape this conclusion, the State points to language in that court's opinion denying rehearing, which helpfully suggested two procedural rules the State could use to obtain a commutation before the mandate issued.  *See Hartfield v. State*, 645 S.W.2d 436, 442 (Tex. Crim. App. 1983).  Texas Court of Criminal Appeals Rule 310 provided that the mandate would not issue until fifteen

days after "the ruling on the final motion for rehearing,"[11] and Texas Court of

Criminal Appeals Rule 311 allowed the mandate to be stayed for not more than

sixty days.  But the State took advantage of neither rule: the governor signed the

proclamation over a month after the Rule 310 period expired[12] and no Rule 311

motion to stay the mandate was ever filed.  Likewise, the State failed to take

advantage of a third option not mentioned by the court—a motion to withdraw the

mandate.  *See Schafer v. State,* 780 S.W.2d 801, 802 n.* (Tex. Crim. App. 1972)

(noting that the Court of Criminal Appeals has authority to withdraw its mandate

at any time during the same term it was issued); *Deramee v. State*, 379 S.W.2d 908,

909 (Tex. Crim. App. 1964) (withdrawing mandate upon appellant's motion).  No

---

[11] *Id.* at 442.  In Hartfield's case, the mandate did not issue until *thirty-seven* days after the court's January 26, 1983 opinion denying rehearing, which in turn was handed down more than two years after the court's original decision.  The proclamation's tardiness can thus hardly be blamed on a rush to final judgment by the Court of Criminal Appeals.

[12] The State tries to bring the governor's March 15, 1983 proclamation within Rule 310's fifteen day window by arguing that the Court of Criminal Appeals's "ruling on the final motion for rehearing" was its March 1, 1983 order denying the State leave to file a second motion for rehearing, not its January 26, 1983 ruling on the first motion for rehearing.  But this argument misreads Rule 310.  Rule 310's time limit ran from the court's "ruling on the final motion for rehearing," not the court's ruling on the final motion *for leave* to file a motion for rehearing.  The distinction is important: a court cannot rule on a motion for rehearing if it does not allow the motion to be filed.  Otherwise, if a ruling denying leave were considered a ruling on the motion for rehearing itself, then Rule 310 would have allowed losing parties to prevent the court's mandate from ever issuing by filing successive motions for leave.

For completeness's sake, the court notes that this rule admits of one exception.  A court's denial of a *single* motion for leave is considered a motion on the motion for rehearing itself; if it were not, then Rule 310's fifteen-day clock would never start to run and the court's mandate would never issue.  *Cf. Vinson v. W.T. Carter & Bro.*, 166 S.W. 363, 363 (Tex. 1914).  Because the State filed more than one motion for leave, that exception is inapplicable here.

explanation or excuse has been offered by the State for these procedural defaults.

Finally, returning to the language of § 2254—"in custody pursuant to the judgment of a State court"—the court must observe that the governor is not a state court and his proclamation is not a court judgment.  Earlier decisions of the Court of Criminal Appeals implicitly recognize these differences by carefully affirming the underlying judgment of conviction after the governor had issued a commutation during appeal.  *See, e.g.*, *Whan,* 485 S.W. 2d at 277; *Turner,* 485 S.W.2d at 284.  In theory, then, AEDPA's threshold condition might not be satisfied by even a valid commutation order that is not confirmed (or at least acknowledged) in a state court judgment.  But that more difficult question is not before the court today because, for the reasons set out above, the proclamation issued on March 15, 1983 was a legal nullity.

B.     **Records from the Wharton County Clerk's Office, Texas Department of Criminal Justice, and Board of Pardons and Paroles**

The State next contends that, even assuming the commutation was not valid, various state authorities have long acted on the good faith belief that it was. Examples include the trial judge's participation in the commutation request to the Board of Pardons and Paroles, a postcard notification from a Wharton County court clerk to the Court of Criminal Appeals stating that the death sentence had been commuted by the governor, and various other records from the Board and the

13

Texas Department of Criminal Justice acknowledging Hartfield's life sentence. Apparently, the State's argument, like the Prince of Denmark's, is that "thinking makes it so."[13]

But nothing in AEDPA suggests that its threshold condition of a state court judgment may be satisfied by a good faith belief as opposed to an actual judgment. Nor should the Court of Criminal Appeals's silence in the face of such communications be regarded as an implicit repudiation of its published judgment. As the Supreme Court long ago declared: "The well-settled maxim that a court of record can act only through its orders made of record, when applied to judicial proceedings, means that where the court must itself act, and act directly, that action must always be evidenced by the record." *Bullitt County v. Washer,* 130 U.S. 142, 149 (1889).  In other words, because a judgment must be evidenced by an entry on the record, silence cannot be a judgment.[14]

Because the records cited by the State are not court judgments, they do not satisfy AEDPA's threshold condition.

---

[13] WILLIAM SHAKESPEARE, HAMLET act 2, sc. 2.

[14] The record indicates that after the Court of Criminal Appeals issued its mandate, it took no further action in Hartfield's case until 2007 when it rejected Hartfield's two habeas petitions and his application for leave to file a petition for a writ of mandamus.  The court discusses the effect of those rulings in subpart D.

C.    1991 and 1993 Legislation

The State also points to subsequent legislation in support of its position.  In 1991, the Texas legislature amended the Texas Code of Criminal Procedure to allow for punishment-only reversals in capital murder cases.  *See* TEX. CODE CRIM PROC. ANN., art. 37.071, § 2(a) (Vernon Supp. 1992) (requiring the sentencing phase in a capital case to be "conducted in the trial court and *except as provided by Article 44.29(c)* of this code, before the trial jury") (emphasis added); *id.* art. 44.29(c) (allowing a new jury to determine sentence in a capital murder case reversed for error in punishment only).  In 1993, the Texas legislature made the 1991 amendments retroactive to all capital crimes committed before September 1, 1991.  *See* TEX. CODE CRIM. PROC. ANN., art. 37.0711, §§ 1, 3(a) (Vernon Supp. 1994).

Again,  the Texas legislature is not a court, and its enactments are not court judgments.  Nor does it have the power to convict and sentence a criminal defendant because the Texas constitution, like its federal counterpart, prohibits bills of attainder.  *See* U.S. CONST. art. I, § 9, cl. 3; TEX. CONST. art. 1, § 16; *see also Cummings v. Missouri*, 71 U.S. 277, 323 (1866) ("A bill of attainder is a legislative act which inflicts punishment without a judicial trial.").  For the same reason, the Texas legislature does not have the power to reinstate a conviction that was reversed by a final mandate of the Court of Criminal Appeals.  It follows that no

legislative amendment to the Texas Code of Criminal Procedure, retroactive or not, can constitute a "judgment of a State court" under AEDPA.

The State does not challenge this proposition directly.  Instead, it offers two round-about arguments, neither persuasive.  First, it contends that in light of these retroactive amendments, the Court of Criminal Appeals acted reasonably in determining that Hatfield's conviction remains in force and his sentence was properly commuted by the Governor; therefore this court should defer to the court's determination.  The fallacy here is obvious: it presumes the existence of such a ruling by the Court of Criminal Appeals.  But the court did no such thing; rather, its 1983 published decision did the exact opposite—it reversed Hartfield's conviction and ordered a new trial.  Nor did the court overturn that decision with its habeas rulings in 2007, as the court will show in the next subpart.  Thus, even assuming deference was appropriate here, it would undermine rather than support the State's position.[15]

---

[15] Though AEDPA requires a level of deference to state court findings of fact and conclusions of law, AEDPA does not require deference in answering the gateway question of AEDPA's applicability to a petitioner's claim.  That question is one of federal statutory law that a federal court is free to answer independently.  *See, e.g.*, *Caldwell v. Dretke*, 429 F.3d 521, 526-28 (5th Cir. 2005) (interpreting "judgment" in AEDPA to include a Texas court's order of deferred adjudication even though Texas law narrowly defines judgment to include only an order of conviction or acquittal).

The State urges this court not to arrive at its own answer but instead defer to its opinion that Hartfield is being held under a state court judgment by invoking AEDPA's supposed purposes of comity, finality, and federalism.  But this argument invites the court to read the statutory requirement "pursuant to the judgment of a State court" out of AEDPA in the name of

The State next argues that, even assuming Hartfield is entitled to relief as a

pretrial habeas petitioner under § 2241, the 1993 amendments preclude any new

trial on guilt and allow only for a retrial on punishment, notwithstanding the 1983

mandate of the Court of Criminal Appeals.  This proposition is dubious,[16] but,

more  fundamentally,  it  ignores  the  substance  of  Hartfield's  claim  on  the

merits—the violation of his right to a speedy trial—for which the only remedy is

dismissal of the charges.   *See Barker v. Wingo,* 407 U.S. 514, 522 (1972).  If

Hartfield prevails on the merits of his claim, there will  be no need for a retrial of

any sort, either of guilt or punishment.

In sum, the 1991 and 1993 amendments to the Texas Code of Criminal

Procedure are not judgments of a state court within the meaning of § 2254.

D.    **The 2007 State Habeas Ruling**

Finally,  the  State  relies  most  heavily  on  the  2007  ruling  by  the  Court  of

---

its nebulous purposes.  The court refuses to do such violence to the plain meaning of AEDPA in
the absence of more specific statutory direction.  *See United States v. Am. Trucking Ass'ns,* 310 U.S.
534, 543 (1940) ("There is, of course, no more persuasive evidence of the purpose of a statute
than the words by which the legislature undertook to give expression to its wishes."); Lee
Kovarsky, *AEDPA's Wrecks: Comity, Finality, and Federalism,* 82 Tul. L. Rev. 443, 485 (2007)
("Congress did not enact 'comity, federalism, and finality'; it enacted AEDPA.") (internal
quotation marks omitted).

[16] It is difficult to understand how the trial court, a la the Queen of Hearts, could conduct
a punishment phase absent an underlying conviction, which (as the court has already explained)
the legislature has no power to impose.

17

Criminal Appeals that denied Hartfield's request for state habeas relief.[17]  That
ruling consisted entirely of four words: "DENIED WITHOUT WRITTEN
ORDER."[18]

According to the State, these words silently did three things: (1) they
withdrew the court's 1983 mandate for a new trial, (2) they reinstated Hartfield's
conviction, and (3) they validated the governor's 1983 purported commutation.
These unstated consequences supposedly flow from the following two premises.
First, Hartfield's state habeas application was processed under article 11.07 of the
Texas Code of Criminal Procedure, which governs procedures for habeas
applications "in which the applicant seeks relief from a felony judgment imposing
a penalty other than death."  TEX. CODE CRIM. PROC. ANN. art 11.07, § 1 (Vernon
2005).  Second, the court's use of the word "DENIED" implies that it ruled on the
merits rather than dismissed for lack of jurisdiction, which would have been the
appropriate disposition if the court believed its earlier mandate was still in effect.

This argument fails for several reasons.  First of all, it is true that under
Texas appellate practice the conventional understanding is that a "denial" signifies
a ruling on the merits while a "dismissal" signifies lack of jurisdiction or some

---

[17] In 2007, the Court of Criminal Appeals also denied Hartfield's second application for
state habeas relief as successive and denied Hartfield's application for leave to file a petition for
writ of mandamus.  *See* Appxs. G, H.

[18] Appx. F.

18

other non-merits disposition.  *See Ex parte Torres,* 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).  But these labels are not dispositive.  *See id.* ("In determining the nature of a disposition, we look beyond mere labels to the substance of the action taken."); *Ex parte Thomas*, 953 S.W.2d 286, 289 (Tex. Crim. App. 1997) (same).  In *Thomas,* for instance, the Court of Criminal Appeals held that an earlier habeas application "denied without written order" was in reality a dismissal for lack of jurisdiction, which meant that there had been no final disposition of the application on the merits.

As in *Thomas*, there is good reason to believe here that the Court of Criminal Appeals did not reach the merits of Hartfield's speedy trial claim, which is based on the State's failure to obey the court's mandate for a new trial and the invalidity of the governor's commutation.  This claim was not among the claims Hartfield presented in his pro se original state habeas application on the standard state form, filed on November 14, 2006.[19]  Instead, Hartfield's speedy trial claim was asserted in a supplemental writ that was filed almost two weeks later on November 27.[20]  But there is no reference to this supplemental writ in the district clerk's article 11.07 certificate, issued on December 19, 2006, declaring that

---

[19] *See* Appx. I.

[20] *See* Appx. J.

Hartfield's November 14, 2006 application had been overruled by operation of law.[21]  Given this record, it is possible that the Court of Criminal Appeals was unaware of Hartfield's supplemental speedy trial claim even though it was part of the record on appeal when the court denied Hartfield's application.

But even if Hartfield's speedy trial claim had been perfectly teed up for appellate review and the Court of Criminal Appeals was fully aware of it, this court has found no precedent for the proposition that a state court's denial of habeas relief is a state court judgment under which a person can be "in custody" for purposes of § 2254.  A habeas case is typically a *collateral* proceeding in which the petitioner, *already* in custody pursuant to some previous judgment, seeks to challenge the constitutionality of that prior proceeding.  *See, e.g., Waley v. Johnston*, 316 U.S. 101, 104-05 (1942).  An adverse ruling in such a proceeding merely confirms the validity of, rather than supersedes, the prior judgment.  To hold otherwise, i.e. that a habeas petitioner can become "in custody pursuant to the judgment of a State court" as the result of a proceeding initiated by himself, would surely be odd, if not entirely perverse.  Criminal defendants are not normally placed in a worse position when they seek to vindicate their legal rights

---

[21] *See* Appx. K.  Though the clerk's certificate refers to the application of *Ex parte David Anthony Theriot*, the certificate's cause number correctly matches the number for Hartfield's application.

in court.

Moreover, accepting for the sake of argument that a habeas denial alone can satisfy the threshold condition of § 2254, the summary denial issued here does not clear that hurdle.   In the criminal context, federal courts have uniformly interpreted "judgment" to include a state court's judgment of conviction and sentence.[22]   The four words comprising the entirety of the Court of Criminal Appeals' decision—"denied without written order"—are too meager to carry the implied significance argued by the State.   If the Court of Criminal Appeals had really intended by its habeas decision to recall its 1983 mandate, to reinstate Hartfield's conviction, and to recognize the governor's belated commutation, it is reasonable to expect such an intention would be stated expressly.   This court will not assume that a state appellate court would so lightly and silently turn its back on its own published decision, especially in a capital murder case.

Having found all of the State's arguments wanting, the court is left with one conclusion: Hartfield is *not* in custody pursuant to the judgment of a state court. When the Court of Criminal Appeals reversed Hartfield's conviction and issued its mandate in 1983, the trial court's judgment of conviction and sentence ceased to

---

[22] *See, e.g., Duncan v. Walker*, 533 U.S. 167, 176 (2001); *Braden v. 30th Judicial Circuit Court of Ky.*, 410 U.S. 484, 503 (1973) (Rehnquist, J., dissenting); *Walck v. Edmondson*, 472 F.3d 1227, 1234 (10th Cir. 2007); *Walker v. Lambert*, 370 F.3d 1002, 1006 (9th Cir. 2004); *Walker v. O'Brien*, 216 F.3d 626, 633 (7th Cir. 2000).

exist.  No subsequent event has changed this simple fact.  Therefore, the court must construe Hartfield's habeas petition as one made under § 2241.

## 2. Is Jurisdiction/Venue Proper in the Southern District of Texas?

Because a § 2241 habeas petition challenges the legality of the petitioner's physical confinement, the general jurisdiction/venue rule is that the petition must be brought in the district where the petitioner is being held and name the petitioner's jailer as the respondent.  *See Rumsfeld v. Padilla*, 542 U.S. 426, 435-36 (2004).  In Hartfield's case, that district is the Eastern District of Texas and that respondent is Senior Warden John Rupert.

Hartfield does not contest the general rule but instead argues that it does not apply to his petition.  According to Hartfield, his petition, unlike a traditional § 2241 petition, challenges not only the legality of his physical confinement, but also the violation of his constitutional right to a speedy trial.  Hartfield contends that his speedy trial claim gives rise to jurisdiction in the Southern District of Texas because, if his petition is granted, the remedy is a new trial in Wharton County, Texas.  And only a federal court in the Southern District of Texas has  jurisdiction to order such a remedy because only it has personal jurisdiction over Wharton County officials.

The court rejects this argument because it misstates the remedy for a speedy trial violation.  When a defendant's right to a speedy trial has been violated, the

remedy is not a retrial but a dismissal of the charges against him and his release. *See Strunk v. United States*, 412 U.S. 434, 439-40 (1973) (citing *Barker v. Wingo*, 407 U.S. 514, 522 (1972)); *Prince v. State of Alabama*, 507 F.2d 693, 708 (5th Cir. 1975).  Consequently, if this court granted Hartfield's habeas petition, it would have to order prison officials in the Eastern District of Texas to release him. Without a judgment of conviction from a state court in the Southern District of Texas to give this court jurisdiction over those prison officials, the only basis for such jurisdiction would be personal jurisdiction.  Yet this court has no personal jurisdiction over those officials—only the Eastern District does.  Therefore, even though Hartfield's § 2241 petition raises a constitutional speedy trial claim, that claim is not sufficient to supplant the general rule and vest this court with jurisdiction.

     As an alternative argument, Hartfield cites *Braden v. 30th Judicial Circuit of Ky.*, 410 U.S. 484 (1973) for the proposition that jurisdiction is appropriate in the district of the "ultimate" custodian even though the petitioner may be held in another district by an immediate custodian.  According to Hartfield, the trial judge and district attorney in Wharton County are his ultimate custodians because they have denied him his right to a speedy trial.

     This argument is unavailing because the Supreme Court in *Rumsfeld v. Padilla* squarely limited *Braden*'s ultimate custodian exception to situations in

23

which no immediate physical custodian holds the petitioner.  *Padilla*, 542 U.S. at 439 ("In *Braden* . . . the immediate custodian rule did not apply because *there was no* immediate physical custodian with respect to the 'custody' being challenged. That is not the case here: Commander Marr exercises day-to-day control over Padilla's physical custody.").  Because Hartfield is in the immediate physical custody of Senior Warden Rupert, *Braden*'s ultimate custodian exception does not apply.

Hartfield should have filed his § 2241 petition in the district of his confinement, the Eastern District of Texas.  Though this court could dismiss his petition for lack of jurisdiction, the more appropriate course of action is to substitute Senior Warden Rupert as the respondent and to transfer the case to the Eastern District of Texas.  *See* 28 U.S.C. § 1631 (2006); Fed. R. Civ. P. 21; *Brinar v. Williamson*, 245 F.3d 515, 516 (5th Cir. 2001).

### Conclusion

For the foregoing reasons, the court recommends the following: (1) Hartfield's petition be construed as pretrial habeas petition under § 2241, (2) Senior Warden Rupert be substituted as the respondent, and (3) this case be transferred to the Eastern District of Texas.

The parties have ten days from the service of this Memorandum and Recommendation to file written objections.  Failure to file timely objections will

24

preclude appellate review of factual findings or legal conclusions, except for plain error.  *See* 28 U.S.C. § 636(b)(1)(c) (2006); Fed. R. Civ. P. 72.

Signed at Houston, Texas on January 29, 2009.


Stephen Wm Smith
United States Magistrate Judge