IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| JERRY HARTFIELD | § | |
| v. | § | CIVIL ACTION NO. 6:09cv98 |
| DIRECTOR, TDCJ-ID | § | |

ORDER

The Petitioner Jerry Hartfield filed this habeas corpus petition complaining of the legality of his continued confinement. Hartfield originally filed his petition *pro se*, but is now represented by the Federal Public Defender for the Eastern District of Texas, who was appointed on his behalf.

Hartfield's petition was dismissed without prejudice for failure to exhaust state remedies on April 29, 2011. On May 20, 2011, Hartfield filed a notice of appeal, followed on May 27 by a motion for certificate of appealability. The Respondent has also filed a notice of appeal.

In his motion, Hartfield sets out five grounds for the issuance of a certificate of appealability. These are: (1) whether there is a requirement of exhaustion of administrative remedies under 28 U.S.C. §2241; (2) whether Hartfield has exhausted his administrative remedies, if these are required; (3) whether the exhaustion requirement should be waived in this case as it is prudential and not jurisdictional; (4) whether Hartfield has been denied his right to a speedy trial under the Sixth Amendment; and (5) if Hartfield has been denied a speedy trial, what is the proper relief.

To obtain a certificate of appealability, a petitioner must make the same showing as was required for a certificate of probable cause. Else v. Johnson, 104 F.3d 82, 83 (5th Cir. 1997). The only difference is that the district court, in granting a certificate of appealability, must specify the issues to be appealed. Muniz v. Johnson, 114 F.3d 43, 45 (5th Cir. 1997).

The prerequisite for either a certificate of probable cause or a certificate of appealability is a substantial showing that the petitioner has been denied a federal right. Newby v. Johnson, 81 F.3d 567, 569 (5th Cir. 1996); James v. Cain, 50 F.3d 1327, 1330 (5th Cir. 1995). To do this, he must

demonstrate that the issues are debatable among jurists of reason, that a court could resolve the issues in a different manner, or that the questions are adequate to deserve encouragement to proceed further. James, 50 F.3d at 1330.

In this case, Hartfield specifies five bases upon which he believes that the certificate of appealability should issue. The first three issues all relate to matters of exhaustion under 28 U.S.C. § 2241. As the Court has observed before in these proceedings, Hartfield originally filed his application for writ of habeas corpus under 28 U.S.C. § 2254, which has an explicit exhaustion requirement stated in its statutory language. That filing was in the Southern District of Texas. However, that district court determined that Hartfield's petition arose under § 2241, which has no statutory exhaustion requirement, but does have one arising under judicially-crafted law observing comity between the federal and state sovereignties. Hartfield himself now claims to be a pre-trial detainee whose right to federal habeas relief lies under § 2241.

This brings the argument back to the issue this Court raised in its Memorandum Adopting Report and Recommendation of April 29, 2011 (docket entry #57). Inherent in Hartfield's first three issues is the underlying question whether the Texas Court of Criminal Appeals' 1983 mandate requiring a new trial in both the guilt and punishment phases, issued 11 days before the Governor commuted Hartfield's sentence from death to life imprisonment, effectively nullified the commutation and returned Hartfield to his pre-conviction status?[1]

A Texas Court of Criminal Appeals mandate is the stamp of finality on the appellate court's review. See Jones v. State, 711 S.W.2d 634, 636 (Tex. Crim. App. 1986) ("The law is settled that a conviction from which an appeal has been taken is not considered to be a final conviction until the conviction is affirmed by the appellate court and that court's mandate of affirmance becomes final.")

---

[1] The parties' objections to the Magistrate Judge's Report and Recommendation in this case also highlight the issue. Hartfield contended, in his objections, that his petition is governed by § 2241 and that the exhaustion requirement imposed by judicial case law on that statute should not be enforced. The Respondent objected to the extent that the Report appeared to adopt the reasoning of the Southern District of Texas, concluding that § 2241 applies and placing Hartfield in a pre-conviction status, inherently meaning that the judgment of conviction in Hartfield's underlying trial in 1977 is non-existent.

(citations omitted). However, there is no on-point Texas case clearly establishing the effect of a mandate for a new trial, including as here both the guilt and punishment phases, issued before the Texas Governor issues a commutation of the originally-imposed punishment from death to life imprisonment.

This Court has found only brief references in *dicta* as to what such an effect may be under Texas law. In <u>Adams v. State</u>, 624 S.W.2d 568, 569 (Tex. Crim. App. 1981), the Texas Court of Criminal Appeals observed that the United States Supreme Court's reversal of the appellant's death sentence for <u>Witherspoon</u> error "ha[d] no direct effect on the as yet unaltered judgment of the trial court. Only upon entry of a new judgment of this Court **and the issuance of this Court's mandate upon that judgment** would the trial court's judgment, and with it the jury's death-producing verdict, be set aside." (Emphasis added.). In granting a motion for rehearing and affirming the judgment of conviction, the appellate court further noted with regard to the death sentence that:

> The dissent's argument that there was "nothing to commute" when the Governor entered his order presumes a direct impact by the Supreme Court decision upon the jury's verdict, outside of time and the orderly course of judicial proceedings. The sequence of events, however, is otherwise. The Supreme Court decision initiated a sequence of proceedings which, if allowed to run a natural course, would have resulted in there being "nothing to commute." The Governor's order, however, reached the punishment before the judicial sequence did, and it is the judiciary, not the executive branch, that is left with no death penalty upon which to exercise its power.

<u>Id</u>. In <u>O'Pry v. State</u>, 642 S.W.2d 748, 751 (Tex. Crim. App. 1981, <u>on reh'g</u> Dec. 22, 1982), a jury convicted the defendant of capital murder and imposed the death penalty. The Court of Criminal Appeals reversed for <u>Witherspoon</u> error and remanded for a new trial in its original decision, which issued May 20, 1981. <u>O'Pry</u>, 642 S.W.2d at 751. After that decision, and before the Court of Criminal Appeals issued its mandate, the Governor commuted the sentence from death to life imprisonment. The State moved for rehearing on the issue of reformation of the trial court's judgment following the Governor's commutation; the defendant-appellant also moved for rehearing, arguing that the Court of Criminal Appeals's original decision was not "mooted" by the Governor's commutation. <u>Id</u>. The Court, relying on <u>Adams</u>, <u>supra</u>, held that "[n]o mandate having been issued

3

here, we are free to grant the State's motion for rehearing" and saw "no reason why the Governor's commutation should not be given effect." Id.

While suggestive that a mandate for a new trial on both the guilt and punishment phases issued before a gubernatorial commutation would make the commutation a nullity and place the convict back into a pre-conviction status, the Court is reluctant to rely on *dicta* in making this determination. No clearly established point of Texas law requires this result. The Court remains mindful that it is preferable for the high court in Texas to interpret the effect of its own laws rather than the federal court.

Therefore, the Court takes this opportunity to again raise the issue of certifying the question to the Texas Court of Criminal Appeals as a "determinative question[] of Texas criminal law having no controlling Court of Criminal Appeals precedent." See Tex. R. App. P. 74.1. Because Rule 74.1 requires such a certified question to be posed by a federal appellate court, this Court respectfully suggests that the United States Court of Appeals for the Fifth Circuit consider certifying the following, or similar, questions to the Texas Court of Criminal Appeals in aid of determining Hartfield's status and the first three issues raised for a certificate of appealability:

> Under the facts and timing of this case, what is the effect under Texas criminal law as it existed in 1983 when the Court of Criminal Appeals ordered a remand with new trial and then issued its mandate *before* a Proclamation of Commutation from death to life imprisonment by the Texas Governor? Is the Governor's commutation legal and effective so as to leave Hartfield's conviction in place and simply replace his death sentence with life imprisonment; or, does the prior issue of the Court of Criminal Appeals' mandate render the commutation a nullity and effectively return Hartfield to his pre-conviction status?[2]

Having addressed Hartfield's first three issues for a certificate of appealability, the fourth and fifth of these issues concern the merits of his claims, which were not reached by this Court because of its decision that Hartfield had failed to exhaust his state remedies. Nonetheless, in the interest of

---

[2] The Court first posed this question in its April 29, 2011, Memorandum Adopting Report and Recommendation, referred to above. At that time, it was unclear whether either or both of the parties would appeal this case. As both parties have appealed, the Court believes it appropriate now to raise this question directly to the Fifth Circuit.

justice and based upon the nature of this case, the Court has determined that Hartfield is entitled to a certificate of appealability on all five grounds set out in his motion. It is accordingly

**ORDERED** that the Petitioner Jerry Hartfield's motion for a certificate of appealability is **GRANTED**. A certificate of appealability shall issue on the five grounds which he sets out in his motion, which are: (1) whether there is a requirement of exhaustion of administrative remedies under 28 U.S.C. §2241; (2) whether Hartfield has exhausted his administrative remedies, if these are required; (3) whether the exhaustion requirement should be waived in this case as it is prudential and not jurisdictional; (4) whether Hartfield has been denied his right to a speedy trial under the Sixth Amendment; and (5) if Hartfield has been denied a speedy trial, what is the proper relief.

**It is SO ORDERED.**

**SIGNED this 30th day of June, 2011.**

_____
MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE